**UNITED STATES of America, Appellant,**

v.

**SECURITY NATIONAL BANK,**
**Defendant-Appellee.**

No. 282, Docket 76–1283.

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1976.

Decided Dec. 6, 1976.

Edward R. Korman, Chief Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., Robert F. Katzberg, Asst. U. S. Atty., New York City, of counsel), for appellant.

Eugene F. Bannigan, New York City (Lord, Day & Lord, New York City, Herbert Brownell, John W. Castles, 3d, James M. Morrissey, New York City, of counsel), for defendant-appellee.

Before WATERMAN, VAN GRAAFEI-LAND, Circuit Judges, and MOTLEY, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

On September 5, 1975, a grand jury sitting in the Eastern District of New York indicted Security National Bank on 9 counts of making unlawful political contributions in violation of 18 U.S.C. § 610. Three of the bank's officers were charged with conspiring to cause the bank to make these unlawful contributions. These same officers were also charged with conspiracy to misapply bank funds in violation of 18 U.S.C. § 656, and one of them was charged with making false statements in violation of 18 U.S.C. § 1001. Following a ten-week trial before Judge Costantino and a jury, verdicts of not guilty were returned as to all charges except one substantive count against an individual defendant. The Government now appeals from the judgment acquitting the corporate defendant, contending that it resulted from erroneous instructions given to the jury by the trial judge. Because we conclude that an appeal cannot be taken from this judgment of ac-

* Of the Southern District of New York, sitting by designation.

quittal, we do not reach the merits of the Government's contention.

In *United States v. Jenkins,* 490 F.2d 868 (2d Cir. 1973), aff'd, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), we held that despite the 1970 amendment to the Criminal Appeals Act, 18 U.S.C. § 3731, when a defendant has been acquitted after a trial on the merits, the double jeopardy clause of the Constitution precludes appeal by the Government. This, of course, was the well-established rule prior to the amendment. *See United States v. Wilson,* 420 U.S. 332, 352, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *Kepner v. United States,* 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). Conceding, as it must, that it is barred from appealing judgments acquitting individual defendants, the Government now contends that a corporate defendant should not be entitled to the same double jeopardy protection.

This argument is advanced without citation of supporting authority and in the face of substantial authority to the contrary. In *Fong Foo v. United States, supra,* 369 U.S. at 143, 82 S.Ct. 671, the Court held that the Court of Appeals erred in setting aside a judgment acquitting a corporate defendant, stating that the double jeopardy provision of the Constitution was "at the very root" of the case and that its guaranty had been violated. Lower court decisions are in unanimous accord. *See, e. g., United States v. Martin Linen Supply Co.,* 534 F.2d 585 (5th Cir.), cert. granted, —— U.S. ——, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); *United States v. Southern Ry.,* 485 F.2d 309, 312 (4th Cir. 1973); *United States v. Armco Steel Corp.,* 252 F.Supp. 364, 368 (S.D.Cal. 1966); *City of Englewood v. George M. Brewster & Son, Inc.,* 77 N.J.Super. 248, 186 A.2d 120 (1962). In other cases, such as *Rex Trailer Co., Inc. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) and *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), the Supreme Court has assumed a corporate right to double jeopardy protection by considering claims for such protec-

tion on the merits "a quite improper procedure", according to Mr. Justice Jackson, "if the corporation had no standing to raise the constitutional questions." *Wheeling Steel Corp. v. Glander,* 337 U.S. 562, 575, 69 S.Ct. 1291, 1298, 93 L.Ed. 1544 (1949).

Because we are not empowered to overrule Supreme Court decisions, *Bank of New York v. Helvering,* 132 F.2d 773, 775 (2d Cir. 1943), the Government seeks to minimize the precedential authority of *Fong Foo,* contending that the question of the applicability of the double jeopardy doctrine to corporations was not specifically considered by the Court in that case. Reference to the petitioner's brief in *Fong Foo* discloses, however, that this precise issue was raised and briefed. At most, there was a failure by the Court to set forth the reasons why it adopted petitioner's position.

■ Even if we were to accept the authority which the Government so graciously concedes us, we are presented with no persuasive reasons for exercising it. The Government's technical argument that the Constitution precludes double jeopardy only of "life and limb" was rejected by the Supreme Court many years ago. *See Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Applied literally, this clause would preclude a defendant being placed twice in jeopardy only for capital felonies, and some early cases so held. *See, e. g., People v. Goodwin,* 18 Johns. 187, 201 (N.Y.Sup.Ct.1820); *United States v. Gilbert,* 2 Sumner 19, 45 (1st Cir. 1834). However, in *Ex parte Lange,* 85 U.S. 163, 21 L.Ed. 872 (1873), the Supreme Court, recognizing that this constitutional provision was merely an embodiment of common law principles, held that it applied to misdemeanors as well. Although most state constitutions also contain double jeopardy provisions, their phraseology differs from state to state, proscribing double jeopardy "for the same offense", "of life or limb", "of life or liberty", "of punishment", et cetera. *Index Digest of State Constitutions,* 576 (1959). Despite the differences in language, it is generally held that these clauses mean substantially the same thing, *State v. Wolf,* 46 N.J. 301, 216

A.2d 586 (1966); *Gomez v. Superior Court,* 50 Cal.2d 640, 649, 328 P.2d 976 (1958); *Stout v. State ex rel. Caldwell,* 36 Okl. 744, 130 P. 553 (1913); *i. e.,* that one may not be tried a second time for the same offense. *Calvaresi v. United States,* 216 F.2d 891, 902 (10th Cir. 1954), *rev'd on other grounds,* 348 U.S. 961, 75 S.Ct. 522, 99 L.Ed. 749 (1955).

The prohibition against double jeopardy, "one of the oldest ideas found in western civilization", *Bartkus v. Illinois,* 359 U.S. 121, 151, 79 S.Ct. 676, 696, 3 L.Ed.2d 684 (1959) (Black, *J.,* dissenting), has become "part of our American concept of fundamental fairness." *Brock v. North Carolina,* 344 U.S. 424, 435, 73 S.Ct. 349, 354, 97 L.Ed. 456 (1953) (Vinson, C. J., dissenting). It represents such a "fundamental ideal in our constitutional heritage" that its basic core must be included within the equally fundamental constitutional right of due process. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); *see also United States v. Wilkins,* 348 F.2d 844, 854 (2d Cir. 1965), *cert. denied,* 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966). We see no valid reason why a corporation which is a "person" entitled to both equal protection and due process under the Constitution, *Wheeling Steel Corp. v. Glander, supra,* 337 U.S. at 574, 69 S.Ct. 1291, should not also be entitled to the constitutional guaranty against double jeopardy.

The Government argues its cause as if all corporations were industrial giants and all corporate crimes were merely regulatory violations punishable by modest fines. Thus, it seeks to avoid the concept of governmental harassment and oppression which is a basic ingredient of the resistance to double jeopardy. *See Abbate v. United States,* 359 U.S. 187, 189, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Neither corporations nor corporate crimes can be so easily encapsulated. Most New York business corporations, for example, have only a few shareholders, and some have only one. G. Hornstein, *Analysis of Business Corporation Law,* 6 McKinney's Business Corporation

Law, Appendix 1 at 454. Moreover, many corporations are organized for religious, educational, charitable or social purposes, rather than for the pursuit of profit. It is well-settled, also, that a corporate entity may be guilty of a great variety of criminal acts. *See* 10 Fletcher Cyc. Corp. (Perm.Ed.) Chapter 55, § 4951, at 478–83. Indeed, some commentators assert, perhaps a bit enthusiastically, that there is virtually no crime for which a corporation should not be held liable. *See, e. g.,* 3 H. Oleck, Modern Corporation Law § 1681, at 727 (1959). The financial penalties for some of these offenses can be substantial indeed. *See, e. g., Standard Oil Co. of Indiana v. United States,* 164 F. 376 (7th Cir. 1908), *cert. denied,* 212 U.S. 579, 29 S.Ct. 689, 53 L.Ed. 659 (1909); *United States v. Bernstein,* 533 F.2d 775, 809 (2d Cir. 1976) (Van Graafeiland, *J.,* dissenting). Bearing these factors in mind, we are not prepared to accept the Government's contention that "but for the label [a criminal proceeding against a corporation] is little different from a civil case." Government's reply brief at 18.

The small entrepreneur is not spared the embarrassment, expense, anxiety and insecurity resulting from repeated trials on criminal charges, simply because he has incorporated his modest business. That a large corporation may have more substantial financial resources is no more valid ground for depriving it of its constitutional rights than is the possession of greater wealth by an individual. Indeed, the larger the corporation, the more likely it is that its shareholders, who in the end must bear the financial burden consequent upon criminal liability, will be completely innocent and unaware of any corporate wrongdoing.

No corporation, large or small, can escape the "incalcuable effect" which a conviction may have on the public attitude toward the company, 3 H. Oleck, *supra,* § 1683, at 729. Like an individual, it must answer to the "verdict of the community". *Price v. Georgia,* 398 U.S. 323, 331 n.10, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). No corporation, no matter how large, can pit its resources against the overwhelming might

of the State so as to avoid the harassment and the increasing probability of conviction resulting from reprosecutions. *Cf. United States v. U. S. Gypsum Co.,* 404 F.Supp. 619, 621 (D.D.C.1975). In this unequal contest, "fundamental fairness" requires that the Government, having had a full try at establishing criminal wrongdoing, shall not have another.

The appeal is dismissed.