After reviewing the record and the applicable law, I must respectfully dissent in part from the analysis and disposition of this case by the majority. Specifically, I would find that R.C.3109.11, as applied in this case, is unconstitutional.
 {¶ 18} Initially, I must acknowledge that I agree with the majority's conclusion that R.C. 3109.11 is significantly different from the Washington statute reviewed by the Supreme Court in Troxel. I also agree that the above statute, when read in conjunction with R.C. 3109.051(D), is not as sweepingly overbroad as the Washington statute. Additionally, while I would generally agree with the majority's finding that the factors set forth in R.C. 3109.051(D) do permit a trial court to satisfy the requirement's of Troxel, I would note that not all sixteen factors set forth in R.C. 3109.051(D) apply to non-parental visitation rights. However, because R.C. 3109.051(D)(15), which states, "In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court," specifically requires the trial court to give heed to a parent's wishes and concerns, I concur with the majority's general determination that R.C. 3109.11 is, on its face, constitutional.
 {¶ 19} However, while I would find R.C. 3109.11
constitutional on its face, I disagree with the majorities finding that the trial court herein afforded Appellant the extreme deference required under Troxel.
 {¶ 20} In Oliver v. Feldner, which the majority references above, the Seventh District Court of Appeals thoroughly discussedTroxel, as well as the history of cases leading up to the Supreme Court's decision in that case. In Oliver, the Seventh District Court of Appeals noted that while the Supreme Court agreed with the Washington Supreme Court that the Washington statute was unconstitutional, the Supreme Court found the statute to be unconstitutional for different reasons. Oliver,
149 Ohio App.3d at ¶ 52. Specifically, the Oliver Court noted that theTroxel Court found that the Washington statute was unconstitutional as applied to the facts in that case. Id.
 {¶ 21} The Seventh District went on to breakdown the analysis of the Supreme Court in Troxel. Accordingly, the Seventh District stated:
In light of extensive Supreme Court precedent Troxelconcluded that `it cannot now be doubted that the Due ProcessClause of the Fourteenth Amendment protects the fundamental rightof parents to make decisions concerning the care, custody, andcontrol of their children.'
 Troxel also held that, `if a fit parent's decision of thekind at issue here becomes subject to judicial review, the courtmust accord at least some special weight to the parent's owndetermination.' This holding recognizes that there are at leasttwo hurdles of constitutional analysis which must be overcome fora nonparental visitation order to be valid. The first hurdle, andthat which takes up the major part of the Troxel decision,addresses whether there are compelling and narrowly tailoredreasons for a court to be hearing the visitation case at all. Thesecond hurdle addresses whether there are compelling and narrowlytailored reasons for the court to impose a specific visitationorder on the parents. Assuming that the statute has overcome thefirst hurdle (i.e., there is a constitutionally valid reason forhaling the parents into court), the Troxel court articulatedthe "special weight" rule to ensure that any resulting visitationorder would also be narrowly tailored to serve a compellinggovernmental interest.
Id. at ¶ 55-56 (citations omitted.)
 {¶ 22} The Seventh District Court of Appeals noted that the Supreme Court neither defined nor provided much guidance on how to apply its "special weight" rule; however, it went on to look at other Supreme Court decisions that dealt with a "special weight" requirement. Id. at ¶ 59. Specifically, the Seventh District stated:
Even though the Troxel court did not define `specialweight,' previous Supreme Court decisions make it clear that"special weight" is a very strong term signifying extremedeference. See, e.g., Rodrigues v. Hawaii (1984),469 U.S. 1078, 1080, 105 S.Ct. 580, 83 L.Ed.2d 691 (special weight isgiven to a verdict of acquittal, signifying a conclusivepresumption that a second trial would be unfair); GuardiansAssn. v. Civ. Serv. Comm. (1983), 463 U.S. 582, 621,103 S.Ct. 3221, 77 L.Ed.2d 866 (special weight given to longstanding andconsistent administrative interpretations of a statute; courtmust defer to the interpretation even if the court wouldinterpret the statute differently); Comstock v. Group ofInstitutional Investors (1948), 335 U.S. 211, 230,68 S.Ct. 1454, 92 L.Ed. 1911 (findings of bankruptcy judge are givenspecial weight; reviewing courts should defer to those findings).The "special weight" requirement, as illuminated by these priorSupreme Court cases, means that the deference provided to theparent's wishes will be overcome only by some compellinggovernmental interest and overwhelmingly clear circumstancessupporting that governmental interest.
Id.
 {¶ 23} The Seventh District then stated that the traditional areas where the State has had a compelling government interest, necessitating interference with a parent's right to care and custody of their child, include protection of the children from harm and the State's interest in preserving the welfare of its children, which involve situations of delinquency, neglect and abuse." Id. at ¶ 60-61.
 {¶ 24} Finally, the Seventh District held that:
Appellees present no compelling governmental interest forinterfering with appellant's fundamental right to raise herdaughter as she sees fit. There is nothing in the case at barindicating that appellees' petition for visitation arose toprevent actual or potential harm to Laken. It is undisputed thatappellant is a fit parent, so there was no reason for the courtto intervene as parens parentiae. Furthermore, appellees did notseek visitation on the basis that they had functioned as de factoparents to Laken, which may at times serve as a compellinggovernmental interest in nonparental-visitation cases. See,e.g., Rideout v. Riendeau (Me. 2000), 761 A.2d 291, 301.
* * *
It is clear from Troxel that the "special weight" thatmust be given to a parent's childrearing decisions hasconstitutional implications, and to overcome that "specialweight," there must be some showing of compelling reasons andcircumstances to disregard the parent's wishes. We find no suchcompelling reasons either in the nonparental-visitation statuteor the evidence presented in this case. Because we find nocompelling interest at stake, it is also apparent that we cannotfind that the resulting visitation order was narrowly tailored toachieve a compelling interest. Therefore, as applied to thefacts of this case, the trial court's decision must beoverturned.
Id. at ¶ 62, 66.
 {¶ 25} The majority relies upon the fact that the Oliver
Court gave no consideration to the parent's wishes in that case, finding that court's decision distinguishable with the case sub judice. I, on the other hand, find the facts of this case to be similar to Oliver. In Oliver, "[t]he trial court concluded that the only significant explanation for the appellant's refusal to allow visitation was that appellant's mother was against such visitation." Id. at ¶ 68. In the case sub judice, Appellant was not against visitation per se, but rather Appellant was against the court being involved in that visitation. While the trial court's judgment entry does note that it gave "special weight to the wishes and concerns of [Appellant]," I cannot say that such a statement alone is enough to satisfy the requirements ofTroxel.
 {¶ 26} Based upon the above discussion, Appellant is presumed to be a fit parent. Upon review of the record, there is no evidence to contrary. Furthermore, it is presumed that a fit parent will act in their child's best interest. Again, upon review of the record, I find no evidence that Appellant is not acting in accordance with the child's best interests. Finally, I find that Appellee failed to present any evidence to overcome these strong presumptions. Appellee has failed to present any evidence as to why seeking visitation is in the child's best interest, where a fit parent is against such visitation. I do not believe it is enough for a grandparent to merely want visitation. Rather, the petitioning party carries the burden of showing why visitation is in the child's best interest. Furthermore, the petitioner cannot rely solely on the general principle that a child will benefit from a relationship with a biological relative.
 {¶ 27} The trial court in this case did consider the relevant factors under R.C. 3109.051(D); however, I cannot say that the trial court's findings under those factors rose to a level to disregard Appellant's wishes in the case. While Appellant's wish to not have the court involved may seem minimal, it is still the wish of a fit parent who is presumed to act in his child's best interests. Additionally, the trial court in this case seemed to gloss over Appellant's wish in light of Appellee's desire to be involved in the child's life. I cannot say this is enough to satisfy the Troxel requirement.
 {¶ 28} In conclusion, because I cannot find that the trial court had a compelling reason or circumstance to disregard Appellant's wishes in this case, I would find that R.C. 3109.11, as it was applied in this case, is unconstitutional. Accordingly, I respectfully dissent from the majority, and I would reverse the decision of the trial court.